UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

THOMAS PONCHIK,

    Plaintiff,

  v.                                                                               Case No. 05-C-0202

STATE OF WISCONSIN, *et al.*,

    Defendants.

**ORDER**

Thomas Ponchik, who is currently serving a sentence in the Wisconsin prison system, claims that the medical care he received at Green Bay Correctional Institution (GBCI) was either negligent or so deficient as to amount to cruel and unusual punishment in violation of the Eighth Amendment. More specifically, Ponchik alleges that a physician employed by the Wisconsin Department of Corrections (DOC) prescribed a drug for him that adversely interacted with a medication he was already taking, and that the physician and other members of the prison medical staff failed to act promptly to discontinue the medication after the pharmacist issued an alert as to the possibility of an adverse interaction. Ponchik also alleged that over a five-month period the prison medical staff failed to provide him prescribed medications more than 150 times.

Ponchik originally commenced this action in the Circuit Court for Brown County against the State of Wisconsin, GBCI Warden Dan Bertrand, Drs. Westcot Krieger and Richard Heidorn, Health Services Unit Manager Jeananna Hertel, and Staff Nurse Michael Schliesleder. Asserting federal jurisdiction under 28 U.S.C. § 1331, the defendants removed the case to this court pursuant

to 28 U.S.C. § 1441(b). Thereafter, in response to a previous motion filed by the defendants, Ponchik's state law negligence claims against defendants Bertrand and Heidorn were dismissed for failure to comply with Wisconsin's notice of claim procedure. *See* Wis. Stat. § 893.82. What remains are his Eighth Amendment claims against the State of Wisconsin, Warden Bertrand, Dr. Krieger and Nurse Schliesleder, and his state law claims against Dr. Krieger, and Nurses Hertel, and Schliesleder. The case is presently before me on the defendants' motion for summary judgment on the remaining claims against them. For the reasons that follow, their motion will be granted as to the federal claims and the case remanded to state court for further proceedings on the state law claims.

**FACTS**[1]

Thomas Ponchik was an inmate at GBCI from March 28, 2003, to May 20, 2005. (PFOF ¶ 1.) Defendant Westcot Krieger, M.D., is the medical director for the emergency room at Waupun Memorial Hospital. In December 2003, Dr. Krieger, who has provided medical services for the Wisconsin Department of Corrections since the late 1990s, was providing general medical care at GBCI. (PFOF ¶¶ 2-5.) On December 15, 2003, Dr. Krieger saw Ponchik for a foot fungus

---

[1] The operative facts for purposes of the instant motion are primarily the proposed findings of fact ("PFOF") submitted by the defendants. ( Doc. # 79.) Although counsel for plaintiff offers argument regarding nine of the defendants' sixty-three proposed findings, there is no citation to contrary evidence in the record as the local rules of the district require. *See* Civil L.R. 56.2(b)(1). The defendants' proposed findings of fact are therefore accepted as true. Plaintiff's counsel has also violated the local rules by simply including additional factual propositions deemed relevant to the motion in her responsive brief rather than setting them out in numbered paragraphs as the rule requires. *See* Civil L.R. 56.2(b)(2). Since the additional factual propositions are properly supported by citations to the evidentiary record, I will give them due consideration in deciding the motion, but counsel should familiarize herself with the local rules, particularly those governing summary judgment procedure to avoid possible sanctions in the future, including having her response stricken.

condition and prescribed oral ketoconazole, an anti-fungal medication. (PFOF ¶ 22.) A week later, on December 22, 2003, Dr. Krieger wrote an order cancelling the prescription after he received an alert from the pharmacy about the potential for an adverse interaction between ketoconazole and atorvastatin, which had also been prescribed for Ponchik. (PFOF ¶ 23.)

At the time Dr. Krieger wrote the order to cancel the prescription for oral ketoconazole, Ponchik had not yet received any doses of the medication. Despite this fact, Ponchik received two doses before the cancellation order was put into effect: one on December 23 and the other on December 30. (PFOF ¶ 31.) In his Amended Complaint, Ponchik alleges that the interaction of the oral ketoconazole with the atorvastatin he was already taking "caused detrimental health problems to the plaintiff, including the development of conditions known as Myopathy and Rhabdomyolysis."[2] (Am. Compl. ¶ 20.) In support of his claim against Dr. Krieger, Ponchik's medical expert, Dr. Mark Yackley, has submitted a report in which he states that Dr. Krieger deviated from the standard of care by prescribing oral ketoconazole to Ponchik when he was already receiving atorvastatin. Dr. Yackley also states in his report that "he [Ponchik] definitely did have Rhabdomyolysis from the use of Ketoconazole and Atorvastatin based on clinical grounds and information alone" (Dec. 29, 2006 Aff. of Dawn M. Sabel, Ex. 2 at 4), and further that "I do feel that he [Ponchik] did sustain Rhabdomyolysis and feel that this has contributed to his ongoing renal insufficiency." (*Id.*) However, Dr. Yackley had no further criticism of Dr. Krieger, noting that the standard of care does not require a physician who writes a change order to personally follow-up to

---

[2]Myopathy is a disorder of the muscle tissue or muscles. Rhabdomyolysis is the destruction or degeneration of skeletal muscle tissue (as from traumatic injury, excessive exertion, or stroke) that is accompanied by the release of muscle cell contents (as myoglobin and potassium) into the bloodstream resulting in hypovolemia, hyperkalemia, and sometimes acute renal failure. *See* http://www2.merriam-webster.com/cgi-bin/mwmednlm.

3

make sure the order is implemented. And at his deposition, Dr. Yackley testified that he cannot say to a reasonable degree of medical certainty that Ponchik developed Rhabdomyolysis, or that the interaction of the two drugs caused Ponchik renal insufficiency or any other negative health effects. (PFOF ¶¶ 46-48.) Dr. Yackley explained that he could not be certain as to whether Ponchik sustained Rhabdomyolysis because the laboratory testing needed to confirm the diagnosis was not done at the time Ponchik first reported the symptoms. (Aff. of Francis X. Sulllivan, Ex. 2, at 28-29.) Dr. Yackley's best estimate, however, was that Ponchik did sustain Rhabdomyolysis as a result of the drug interaction. (*Id.* at 28.)

In addition to prescribing oral ketoconazole when it was contraindicated, Ponchik also claims the defendants subjected him to cruel and unusual punishment, and/or negligent care and treatment, by denying him his prescribed medications over 150 times between August 16, 2003, and January 26, 2004. (Am. Compl. ¶ 23.) Throughout this period of time, Ponchik was in segregation. (PFOF ¶ 32.) Medications for inmates housed in the segregation unit are distributed by correctional officers, none of whom are named as defendants in Ponchik's lawsuit. (PFOF ¶ 34, 58.) Ponchik receives medication for multiple, chronic, and progressive cardiovascular diseases, including hypertension, diabetes and hyperlipidemia. Given the number of prescription drugs Ponchik receives, the 158 doses he missed over the period claimed amounts to, at most, five percent of the total number he was scheduled to receive. In other words, Ponchik had a 95 percent compliance rate with his medication regime, a rate that is significantly higher than that achieved by most patients who are not incarcerated. (PFOF ¶¶ 60-63.) Finally, although Ponchik claims the missed medication resulted in dizzy spells every week or two; a headache, blurred vision, and ringing in his ears about once a month; occasional itching; and four or five episodes when he broke into a sweat (PFOF ¶ 37), he has no medical evidence supporting his claim. Dr. Yackley has no opinion

4

as to what ill effects Ponchik may have suffered as a result of his failure to receive all of his prescribed medications when scheduled. In his view, the effects of the missed doses of medication, if any, would be temporary. (PFOF ¶¶ 55-57.)

## ANALYSIS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Cox v. Acme Health Serv., Inc.,* 55 F.3d 1304, 1308 (7th Cir. 1995). A genuine issue as to a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1086). A dispute over facts that are not material does not preclude summary judgment. *Donald v. Polk County*, 836 F.2d 376, 379 (7th Cir. 1988).

The movant bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant cannot rest on the pleadings alone but must designate specific facts in affidavits, depositions, answers to interrogatories, or admissions that establish that there is a genuine triable issue. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. Federal rules of civil procedure mandate entry of judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In this case, Ponchik has asserted an Eighth Amendment claim under § 1983 and a negligence, or medical malpractice claim, under the common law of the State of Wisconsin against various defendants. Based on the undisputed facts set forth above, his federal claim fails as to each

5

of the defendants. His § 1983 claim against the State of Wisconsin fails because a state is not a person within the meaning of § 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.")

As to Warden Bertrand, Ponchik's § 1983 claim fails because the undisputed facts show no personal involvement by him. To recover under § 1983 a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). An official satisfies the personal responsibility requirement of § 1983 if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent. *Id.* That is, the official must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye—in short, some causal connection or affirmative link must exist between the action complained about and the official sued in order to recover under § 1983. *Id.* Here, Ponchik offers no evidence that Warden Bertrand was involved in administering ketoconazole to him. Warden Bertrand was not personally involved in any of the health care decisions relating to Ponchik. He never participated in the distribution of medication to Ponchik, nor did he deny or direct anyone else to deny prescribed medication to Ponchik. (PFOF ¶¶ 9-10.) Although Ponchik disputes this fact, arguing that, as Warden of GBCI, Bertrand was responsible for the operation of the entire prison (Br. In Opp. at 13-14), his argument ignores the rule that the doctrine of respondeat superior does not apply to § 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Absent personal involvement by him in the allegedly unconstitutional conduct, or evidence that he knew of and somehow acquiesced in it, Warden McCaughtry simply

6

cannot be liable under § 1983. Because Ponchik has failed to demonstrate that he has evidence of either involvement or knowledge on the part of the warden, his claim against Warden McCaughtry will be dismissed.

As to Dr. Krieger, Ponchik's § 1983 claim fails because there is no evidence from which a jury could conclude that he acted with deliberate indifference to Ponchik's serious medical needs. Even assuming, as Dr. Yackley opined, that Dr. Krieger was negligent in prescribing ketoconazole for Ponchik when he was already taking atorvastatin, this is a far cry from deliberate indifference. As the Seventh Circuit recently explained,

> A deliberate indifference claim requires both an objectively serious risk of harm and a subjectively culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir.2005). A deliberate indifference claim premised upon inadequate medical treatment requires, to satisfy the objective element, a medical condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno*, 414 F.3d at 653. The subjective component of a deliberate indifference claim requires that the prison official knew of "a substantial risk of harm to the inmate and disregarded the risk." *Id.*; *Farmer*, 511 U.S. at 834. Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference.

*Edwards v. Snyder*, __ F.3d __, 2007 WL 675506 *3 (7th Cir. March 7, 2007).

In this case, Ponchik has offered evidence, in the form of Dr. Yackley's opinion, that Dr. Krieger was negligent in prescribing oral ketoconazole to Ponchik when Ponchik was already taking atorvastatin. But he has offered no evidence that Dr. Krieger knew at the time he prescribed the oral ketoconazole that Ponchik was on atorvastatin, or that the two drugs might adversely interact. Moreover, when Dr. Krieger learned of the potential adverse interaction, he wrote an order cancelling the prescription for oral ketoconazole. Given the fact that Dr. Krieger cancelled the oral ketoconazole, and the absence of evidence that he was aware of any risk at the time he prescribed

7

it, a reasonable jury could not find that Dr. Krieger had the requisite state of mind to support a deliberate indifference claim.

Ponchik's claim against Nurse Schliesleder is somewhat confused. Schliesleder was one of several nurses responsible for administering medications and other treatment pursuant to physicians' orders. Schliesleder admits he transcribed Dr. Krieger's order cancelling the oral ketoconazole on December 24, 2003, but states he is unable to determine from reviewing the records when the revised order was entered on the medication administration record. (PFOF ¶ 27.) The parties do not explain what these tasks involve and how they relate to distributing medications to prisoners, so it is difficult to determine what, if anything, Schliesleder should have done differently. There is also no evidence that the cancellation order had any indication of urgency so as to indicate a need for immediate attention. In any event, Ponchik has failed to offer any evidence in response to the defendants' motion that suggests Schliesleder was deliberately indifferent to Ponchik's serious medical needs. On this record, a jury could not find that he is liable under § 1983.

As to Ponchik's more general claim that, while he was in segregation, he was frequently denied medications, it appears from Ponchik's own account that neither Dr. Krieger nor Nurse Schliesleder played any role. (PFOF ¶¶ 58-59.) Even if they had, Ponchik has offered no evidence that the fact that he was not given one of his prescribed medications some 158 times over a six-month period resulted in any harm. Given this record, he cannot prevail on this aspect of his § 1983 claim either. Accordingly, his federal claims will be dismissed against all of the defendants.

Normally, once the federal claims in a lawsuit such as this fall out, a district court will dismiss the remaining state law claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3) or, where the case has been removed from state court, remand them to state court for further proceedings pursuant to 28 U.S.C. § 1446. *Wright v. Associated Ins. Companies, Inc.*, 29 F.3d

8

1244, 1251 (7th Cir. 1994). The general rule is based on the recognition that state courts are primarily entrusted with the adjudication of state law claims. *Van Harken v. City of Chicago*, 103 F.3d 1346, 1355 (7th Cir. 1997). But there are exceptions to the general rule. The district court should retain jurisdiction over the state law claims even after it has dismissed all federal claims if considerations of judicial economy, convenience, fairness and comity warrant such retention. *Wright*, 29 F.3d at 1251. When the court and the parties have already expended substantial time and resources on the case and the state law claims can be easily disposed of, these considerations will usually justify the decision by the district court to retain jurisdiction.

This is not such a case. While I have concluded on the record before me that Ponchik's federal claims fail, I am unable to say the same with respect to his state law claims. There is evidence from which a jury could conclude that Ponchik suffered permanent damage as a result of being given oral ketoconazole while he was already taking atorvastatin. Dr. Yackley states in his report that he does "feel that he [Ponchik] did sustain Rhabdomyolysis and feel[s] that this has contributed to his ongoing renal insufficiency." (Sabo Aff. Ex. 2 at 4.) Defendants have offered no evidence to the contrary. While it is also true that Dr. Yackley declined to render his opinion that Ponchik's Rhabdomyolysis was caused by the interaction between the drugs to a reasonable degree of medical certainty, I do not consider his reluctance to do so fatal to Ponchik's claim. Considered in context, it seems clear that Dr. Yackley is simply acknowledging that he is unable to say with absolute certainty that Ponchik sustained Rhabdomyolysis because the necessary laboratory tests were not performed when the symptoms first appeared. Absolute certainty, however, is not required. Wisconsin courts have held that "conclusions of a medical expert witness should amount to an assertion of his professional opinion, and that an opinion expressed in terms of 'I feel' or 'I

9

believe' is sufficient." *Powers v. Allstate Ins. Co.,* 10 Wis.2d 78, 87, 102 N.W.2d 393, 398 (1960). Dr. Yackley's testimony, considered as a whole, appears to meet this standard.

There is also evidence from which a jury could conclude that Dr. Krieger was negligent. Dr. Krieger acknowledged in his own deposition the importance of inquiring about other medications a patient is taking before prescribing another one in order to guard against adverse interactions. (Sullivan Aff., Ex. F. at 22.) He also admitted that he had two different references – the Physician's Desk Reference and a software program called Hippocrates – that he generally uses to check for possible interactions before prescribing a drug. A jury could find from this evidence, combined with Dr. Yackley's opinion, that Dr. Krieger was negligent in prescribing oral ketoconazole in the first place.

A jury could likewise find Dr. Krieger negligent for failing to act with greater urgency in cancelling the prescription once he received the pharmacy alert warning him of the potential adverse interaction. Although Dr. Yackley testified that a physician is generally entitled to rely on his orders being carried out without following up on them, his opinion would not preclude a jury from concluding that Dr. Krieger should have done more under the circumstances of this case. Dr. Krieger did not even see the alert until a week after he wrote the prescription. When he saw the alert, he apparently issued an order in writing cancelling the original prescription, but took no further steps to make sure that Ponchik did not receive the oral ketoconazole he had prescribed. Given the substantial risk to Ponchik's health and his familiarity with the prison health system based on his years of service for the Department of Corrections, a jury could find that Dr. Krieger should have done more.

As to Nurses Schliesleder and Hertel, the evidence suggests that the failure to implement Dr. Krieger's order cancelling the oral ketoconazole more quickly may have been due both to poor

10

procedures and human error. According to Nurse Schliesleder, inmates in segregation were the last to receive medication, and if the prison was short-staffed, an order cancelling medication may not be acted upon for a day or more. (Sabel Aff., Ex. 4 at 39.) Nurse Hertel was the Health Services Manager at GBCI and was generally responsible for overseeing the delivery of all medical services. (PFOF ¶¶ 13-15.) It also appears that Nurse Schliesleder may have been the only nurse on duty on December 30, 2003, when the second dose of oral ketoconazole was given, almost a full week after Nurse Schliesleder had transcribed the cancellation order. In light of this evidence, I conclude that Ponchik's state law claims cannot be easily disposed of. In accordance with the general rule in this Circuit, these claims will therefore be remanded to the state court for final resolution.

**IT IS THEREFORE ORDERED** that all federal claims are dismissed on their merits and with prejudice. The court declines jurisdiction over Ponchik's state law claims pursuant to 28 U.S.C. § 1367(c)(3), and they are remanded to the Circuit Court for Brown County for further proceedings. The clerk is directed to mail a certified copy of this order to the Clerk of Court for Brown County pursuant to 28 U.S.C. § 1447(c).

Dated this    19th    day of March, 2007.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge